### ANDERSON v. HOUCHINS et al.
### No. 10572.

Court of Civil Appeals of Texas. Galveston.

Dec. 17, 1936.

1030

H. J. Bernard, B. L. Palmer, and Sidney Benbow, all of Houston, for appellant.

A. H. Krichamer, of Houston, and E. F. Fruechte, of Austin, for appellees.

GRAVES, Justice.

This appeal is from an order of the 113th district court of Harris county, entered November 13, 1936, refusing the appellant a temporary injunction, mandatory in its character, against the appellees, that is, O. W. Houchins in his capacity as inspector for the Texas Liquor Control Board, and T. A. Binford as sheriff of Harris county, whereby he sought, pending final trial of the controversy between the parties over the control and possession of the liquor, a writ from the court directing the appellees to return to him the stock of liquors belonging to him that the appellee Houchins, acting in his capacity as such inspector, had on October 31, 1936, seized and taken from the possession of the appellant at his place of business in the city of Houston and had thereafter turned over to the appellee Binford, as such sheriff, to be kept and held by him, all as under the authority of the Texas Liquor Control Act, Acts of 1935, 44th Legislature, Second Called Session, page 1795, c. 467 (Vernon's Ann.P.C. art. 666—1 et seq.), and particularly of sections 6 (c), 29, 30, 31, and 42 thereof (Vernon's Ann.P.C. arts. 666—6 (c), 666—29 to 666—31, 666—42).

Upon consideration of the record, this court concludes that the sought-for temporary writ—so mandatory in its effect—was improvidently denied, upon these among other considerations:

(1) The learned trial court heard evidence, from which, for the purposes here deemed material, these undisputed facts stand out: The appellant at the time of such seizure was occupying his liquor package store at the place indicated supra, 1400 Franklin avenue in Houston, operating the same by virtue of permits for that purpose from each of the state, county, city, and federal governments, when, at about 3 o'clock on the morning of October 31, 1936, Inspector Houchins seized appellant's entire stock of liquor at that location, consisting of ——— cases, loaded it upon a truck, and thereafter turned it over to Sheriff Binford, who has ever since retained the same, to the exclusion and without the consent of the appellant as the owner thereof.

(2) At the time of such seizure and delivery to the sheriff, the liquor store being then closed for the night, as well as at the time of the entry of the appealed-from order by the trial court, no complaint of any sort as for a violation of any provision of the Liquor Control Act had been filed in any court against the appellant, nor was he then under arrest, nor had any warrant or other authority to make such a seizure and delivery of his goods been issued by any court or other public official; appellee Houchins testified on this hearing, however, that there had been 27 violations of the law committed in appellant's place of business (such as sales of liquor during prohibited

hours), the last one on the night of the seizure, immediately after which he had so informed the district attorney of Harris county, whose stenographer at that time had drawn up a faulty complaint for the operation of a common nuisance under the old law; that "the complaint and information is now being refiled under the present statute"; he adds in his brief filed in this court on the appeal that such new complaint had been "filed on December 5 of 1936 in a court of competent jurisdiction in Harris County."

(3) The appellant, for his part, testified that he had been operating his business at all times up to the hour of the seizure according to law; that he had never known of nor had had any reason to believe the law was being violated in any respect at his store; that he had been called there at the time of the seizure on the night indicated by one of his employees, and protested the seizure to Mr. Houchins; that the latter told him he was not going to remove the liquor from the premises, but was going to lock it up and keep it there, and further told him not to employ an attorney.

Mr. Houchins, on being recalled, denied having told appellant he would not remove the goods from the premises, but admitted having told him not to employ an attorney, which he said he had done so that the liquor would not be tied up by any restraining order.

■ Under the facts stated, whatever constitutional questions may ultimately need to be determined, as to which no present consideration is either deemed necessary or given, the statutes so invoked by the inspector, upon the face thereof, fail to justify the lone-hand and summary procedure he followed; the mere lodging at the time of an information with, and the drawing under an obsolete law of a complaint thereon by, a district attorney's stenographer that was never filed in a court, was not such a compliance with this strictly to be construed penal statute (34 Texas Jur. p. 443) as alone to authorize the peremptory seizure in invitum of a merchant's entire stock of goods in his closed premises—thereby perforce depriving him of his entire business—without the authority by writ or order of any court whatever, and without the arrest or restraint of the owner himself; neither, by itself, was the ex post facto refiling of such complaint and information in a competent court on December 5 thereafter a compliance, since at most that could only have conferred potential jurisdiction on such a court, and no hearing therein nor any writ of any sort therefrom had ever been had. Acts 1935, 44th Legislature, Second Called Session, page 1795, chapter 467, article 1, §§ 25, 29, 31, 41, 42, and 44 (Vernon's Ann.P.C. arts. 666—25, 666—29, 666—31, 666—41, 666—42, 666—44); 34 Tex.Jur. p. 440, par. 67, p. 443, par. 68.

■ As indicated supra, the inspector so summarily seized and had held the appellant's entire stock of liquor—as his own brief recites—on the assumption that the 27 sales he testified to constituted the operation of a common nuisance, and that in consequence he had no alternative than to so act under what he terms these "mandatory" provisions of section 31 of the Liquor Control Act (Vernon's Ann.P.C. art. 666—31): "It shall be the duty of *all peace officers of this State,* including city, county and State, *to enforce all provisions of this Act and to assist the Board in detecting violations* of this Act and apprehending offenders *and of county courts, in case of violation to make recommendations* to the Board for revocation of permits. Whenever *any officer shall arrest any person for violation of this Act, he shall take into his possession all liquor* which the person so arrested has in his possession, or on his premises, which is apparently being used in violation of this Act. *In the event the person so arrested is convicted finally,* and it is found that the said liquor has been used in violation of this Act, the same shall be forfeited to the Board and shall be delivered by the Court, or officer to it to be disposed of as herein provided."

The vice in this interpretation of the quoted provisions is that the inspector was admittedly not a peace officer within the meaning thereof, nor did he call one to his aid, having acted singly on his own initiative and by virtue alone of the powers conferred upon him as such "Inspector"; neither had any court acted by writ or recommendation, nor had any "officer" arrested any person for a violation of the act; wherefore it seems plain, he not being an "officer," as therein designated, and there being no express or general power to so impound the property conferred on "Inspectors" like himself, either in this section 31, or elsewhere in the act, with the possible exception of section 30 (Vernon's Ann.P.C. art. 666—30), which applies only to a fact situation inapplicable here, that he had no such power, under this well-settled rule laid

down in 34 Texas Jurisprudence, at page 440, supra: "Public officers and governmental and administrative boards. possess only such powers as are expressly conferred upon them by law or are necessarily implied from the powers so conferred."

He further specially invokes section 6 (c), Vernon's Ann.P.C. art. 666—6 (c), relating to the general powers of the Liquor Board, and section 29 (Vernon's Ann.P.C. art. 666—29), having to do with what is a common nuisance and how its maintenance may be prevented and punished, these being as follows:

"6 (c) To investigate and aid *in the prosecution of violations of this Act* and other Acts relating to liquor, to make seizure of liquor manufactured, sold, kept, imported, or transported in contravention hereof, *and apply for the confiscation thereof whenever required by this Act, and co-operate in the prosecution of offenders before any court of competent jurisdiction."*

"29. *Places for illegal sale as common nuisance* Any room, building, boat, structure, or place of any kind where liquor is sold, manufactured, bartered, or given away in violation of this Act, or of any rule, or regulation of the Board, or where persons are permitted to resort for the purpose of drinking liquor in violation of the law, or any place where such beverages are kept for sale, barter, or gift in violation of law, and all liquor and all property kept and used in said place, hereby are declared to be a common nuisance and any person who maintains or assists in maintaining such common nuisances, shall be guilty of a violation of this Act. Any county, or district attorney, or the Board, or any agent or employee of this Board in the county where such nuisance exists, or is kept, or maintained, *may maintain an action by injunction in the name of the State, or the Board to abate and to temporarily and permanently enjoin such nuisances. Such proceedings shall be guided by the rules of other injunction proceedings,* except that the plaintiff shall not be required to give bond in such action *and upon final judgment against the defendant the Court shall order that said room,* house, building, structure, boat, or place of any kind shall be closed for a period of one year, or closed for a part of said time and until the owner, lessee, tenant, or occupant thereof shall give bond with sufficient surety, to be approved by the Court making the order, in the penal sum of not less than One Thousand Dollars ($1,000) payable to the State, and conditioned that liquor will not thereafter be manufactured, possessed, sold, bartered, or given away, or furnished, or otherwise disposed of therein, or kept thereon, or therein, with the intent to sell, barter, or give away, or otherwise dispose of same contrary to law, and that he will pay all fines, costs, and damages assessed against him for any violation of this Act. If any conditions of such bond be violated the whole amount may be recovered as a penalty for the use of the county wherein the premises are situated."

 Neither do these last-quoted articles confer on a mere "Inspector" the unqualified power one here assumed; on the contrary, they, along with before copied section 31, as the portions italicized in all three by this court seem to it to clearly indicate, contemplate that there shall have first been some law-enforcement action taken either by a regular peace officer or court of the state, like the filing in court of a complaint for a violation of the act, the arrest of the person charged, under warrant or other prescribed authority, or the issuance of judicial process authorizing the seizure and impounding of the property—all in consonance with the principle embedded in jurisprudence of all English-speaking countries since that dim day when Sir Thomas Moore, as Speaker of the House of Commons, peremptorily refused the imperious demand of Cardinal Woolsey for a subsidy for Henry VIII without a hearing; if such be the implication from the terms of the quoted statutes themselves, as this court has concluded, it follows without the necessity of further discussion that the appellant in this instance was wrongfully deprived of the possession of his lawful property; wherefore the judgment will be reversed and the cause remanded, with instructions to the trial court to issue its mandatory injunction against the appellees restoring such possession to him, pending the final trial of the controversy on its merits.

Reversed and remanded, with instructions.